

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2008

# Ahmad v. UPS

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2693

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ahmad v. UPS" (2008). *2008 Decisions.* Paper 1036.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1036

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-2693

———

JAMIL AHMAD,

*Appellant*

v.

UNITED PARCEL SERVICE; TEAMSTER LOCAL 773

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 06-cv-05064)
District Judge: Honorable Juan R. Sanchez

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 6, 2008

Before: FISHER, JORDAN, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: June 9, 2008)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Jamil Ahmad brought a hybrid claim against United Parcel Service, Inc.

and Teamster Local 773 under § 301 of the Labor Management Relations Act. The

District Court granted summary judgment in favor of United Parcel Service and Teamster Local 773. For the reasons set forth below, we will affirm the decision of the District Court.

I.

Because we write solely for the parties, we will set forth only those facts necessary to our analysis.

Appellant Jamil Ahmad was employed at Appellee United Parcel Service, Inc. ("UPS") from 1999 until his discharge on November 21, 2005. Ahmad's employment was governed by a Collective Bargaining Agreement ("CBA") between UPS and Appellee Teamster Local #773 ("Union"). This CBA consisted of two parts: (1) National Master United Parcel Service Agreement ("National Agreement") and (2) Teamsters Central Pennsylvania United Parcel Service Supplemental Agreement ("Supplemental Agreement"). From 2003 until his discharge, Ahmad was employed as a full-time driver.

Ahmad was arrested for driving under the influence of alcohol on September 18, 2005, and reported this violation to UPS. Ahmad was evaluated by substance abuse professionals ("SAP") and signed a Rehabilitation Agreement, which stated that he could be discharged for: "1. Failure to successfully complete rehabilitation, or 2. Any positive specimen, or 3. Failure to comply with the SAP's recommendations or aftercare treatment program." *Joint Supplemental Appendix* ("*JSA*") at 112. Ahmad read and signed this agreement, and admits that he understood the meaning of its terms.

On the morning of November 21, 2005, Ahmad called his supervisor, Earl Yeager, and requested the day off due to illness; however, Ahmad was asked to report to work anyway due to a shortage of drivers. Ahmad informed Yeager that he had taken NyQuil, and in fact, Ahmad drank an entire six-ounce bottle of NyQuil that morning. Ahmad later admitted that he knew NyQuil contained alcohol and later testified that he drank three or four beers on the night of November 20, 2005. Also on the morning of November 21, 2005, Ahmad was called by Business Manager Wayne Foulke and told to report for an alcohol test before his shift. Ahmad submitted to two Breathalyzer tests approximately fifteen minutes apart. Ahmad's blood alcohol content was 0.034 on the first test and 0.027 on the second test. After returning to work, Ahmad met with UPS officials and a Union representative and was terminated by UPS.

Ahmad immediately informed his Union Business Agent, Darrin Fry, of the discharge. That same day, Fry filed a grievance protesting Ahmad's discharge under Article 52 of the Supplemental Agreement. Article 51 of the CBA lays out a four-step grievance procedure: (1) Meeting with employee, UPS, and Union representative to determine if action was proper under the CBA; (2) Grievance hearing to decide unresolved issues from Step One; (3) Appeal before the Central Pennsylvania Area Parcel Grievance Committee ("CPAPGC") to decide unresolved issues from Step Two; and (4) Submission to arbitration of any unresolved issues deadlocked from the CPAPGC panel. *JSA* at 12-14.

3

Following Ahmad's discharge at a meeting pursuant to Step One, Fry and Union Shop Steward Dennis Hower filed a grievance. The Step Two grievance hearing failed to resolve the grievance and Ahmad's dismissal was upheld. Fry announced to those present at the meeting that he would appeal to Step Three. Under the CBA, a Step Three appeal to the CPAPGC must be filed within ten days of the grievance hearing. Although Fry prepared the appeal in time, an administrative error occurred that resulted in the appeal not being timely filed. Upon learning of this error, Fry sent the appeals papers despite their untimeliness, and a hearing was scheduled for February 2, 2006.

In preparation for the CPAPGC appeal, Fry spoke to three union superiors about the potential merits of Ahmad's case, and all three told Fry that the appeal had little merit. Nonetheless, Fry continued to work to put together a case. At the Step Three hearing, UPS objected to the untimely filing. The panel adjourned for an Executive Session to decide the objection. While the panel was adjourned, the panel chairman approached Fry and asked him whether Ahmad wished to resign. After consulting with Fry, Ahmad stated on the record that he wished to resign and withdrew the grievance.

Ahmad filed a hybrid action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in the Lehigh County Court of Common Pleas against UPS and the Union. This case was removed to the United States District Court for the Eastern District of Pennsylvania. The District Court granted summary judgment in favor of UPS and the Union, concluding that Ahmad could not establish either: (1) Any breach of the CBA by

4

UPS, or (2) any breach of the duty of fair representation by the Union. Ahmad appeals from this decision.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Notice of appeal was timely filed. This Court's review of a District Court's grant of summary judgment is plenary. *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991). This Court "must determine whether the evidence, viewed in the light most favorable to [Ahmad], demonstrates that there are no genuine issues of material fact and that [UPS and the Union] are entitled to judgment as a matter of law." *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 841 (3d Cir. 1992); Fed. R. Civ. Pro. 56(c).

## III.

To prevail in a § 301 hybrid action, Ahmad must prove two essential and "inextricably interdependent" elements: (1) UPS breached the CBA, and (2) the Union breached its duty of fair representation. *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983); *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993) (in a § 301 hybrid action, "the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa"). Because Ahmad failed to present sufficient evidence to establish either of these essential elements, this Court will affirm the District Court's grant of

5

summary judgment.

In his grievance, Ahmad asserted that UPS breached the CBA by terminating him without just cause. However, just cause existed to terminate Ahmad pursuant to the Rehabilitation Agreement and the CBA. For example, the Rehabilitation Agreement specified that Ahmad could be discharged for "[a]ny positive specimen." *JSA* at 112; *see also JSA* at 85 (CBA specified that employee could be discharged for "[f]ailure to successfully complete rehabilitation"). Ahmad tested positive for the presence of alcohol in two separate Breathalyzer tests, thus violating both the Rehabilitation Agreement and the CBA. Ahmad also argues that the alcohol was from NyQuil, not recreational alcohol use, and that he had never been subject to any prior serious discipline. However, the Rehabilitation Agreement contained no exceptions for the source of alcohol or for past disciplinary record. Therefore, Ahmad's termination did not violate the CBA.

Ahmad also argues that UPS breached the CBA's grievance procedure by objecting at Step Three to the Union's late filing, thwarting Ahmad's access to arbitration. However, Ahmad points to no provision in either the Supplemental Agreement or the National Agreement to suggest that UPS breached the CBA by objecting to the Union's late filing at Step Three. In essence, Ahmad appears to be arguing that he has an absolute right to have his case arbitrated. However, the law is clear that there is no absolute right to arbitration. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967) ("[W]e do not agree that the individual employee has an absolute right to have his

6

grievance taken to arbitration . . . .").  Moreover, the Supplemental Agreement only entitled Ahmad to an opportunity to have his case arbitrated "[i]f any grievance or dispute cannot be satisfactorily settled by a majority decision of the Panel of the C.P.A.P.G.C." *JSA* at 13.  Because Ahmad's case never went before the CPAPGC (and therefore the CPAPGC never deadlocked), and because UPS violated no provision of the CBA in objecting to the timeliness of Ahmad's Step Three appeal, Ahmad had no right to arbitration in this case.

Ahmad also has failed to offer sufficient evidence to demonstrate that the Union breached its duty of fair representation.  The Supreme Court has stated that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190.  In his brief before this Court, Ahmad made conclusory allegations that the Union acted in bad faith.  Ahmad offered no evidence to support these allegations, and in fact, Ahmad stated that to his knowledge, no member of the Union had any reason to dislike him, hold a grudge against him, treat him unfairly, or discriminate against him.  Ahmad also stated that he thought Fry and Hower had his best interest at heart.  *JSA* at 172-74.

Ahmad further contends that the negative case evaluations given to Fry by his superiors constituted a breach of the duty of fair representation.  However, Ahmad offered no evidence to show that the superiors acted arbitrarily, in a discriminatory

7

manner, or in bad faith. Finally, Ahmad argues that the Union breached its duty of fair representation due to Fry's failure to timely file the Step Three appeal. However, this Court has stated that mere negligence is not enough to support a claim of unfair representation. *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970). Again, because Ahmad offered no evidence that Fry acted arbitrarily, in a discriminatory manner, or in bad faith, there was no breach of the duty of fair representation.

## IV.

We have considered all other arguments made by the parties, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of UPS and the Union.